**E-FILED on**     12/28/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICK J. BARCLAY,

              Plaintiff,

  v.

DRS TECHNOLOGIES,

              Defendant.

NO. C-02-04095 RMW

ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS

**[Docket No. 84, 91]**

Patrick Barclay ("Barclay") moves for an award of attorney's fees.  DRS Technologies ("DRS") opposes the motion.  Barclay also objects to the court clerk's taxation of costs.  DRS does not oppose that motion.  The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court grants Barclay's motions.

## I.  BACKGROUND

On July 10, 2000 Barclay entered into an employment agreement with DRS ("the employment agreement").  March 19, 2005 Findings of Fact and Conclusions of Law ("March Order") at 1.  Section 4(a) of the employment agreement provided that "[i]n the event that DRS terminates your employment for reasons 'other than cause,' within the first two (2) year[s] from the date of hire, you will receive a separation package equal to . . . one (1) year's base salary and benefits."  October 8, 2003 Order Granting

1    Defendant's Motion for Summary Judgment But Giving Plaintiff Leave to Amend ("October Order") at 2.

2    In the spring of 2001, DRS closed the division where Barclay worked.  *Id*.  The parties agreed that

3    Barclay's last day of employment would be November 20, 2001.  July 25, 2004 Order Denying

4    Defendant's Motion for Summary Judgment ("July 25 Order") at 2.

5           On October 12, 2001 DRS presented Barclay with a draft Release agreement.  *Id*.  The Release

6    stated that Barclay "agree[d] that the contract of employment . . . has been terminated."  *Id*.  The Release

7    also provided that Barclay had received "all monies owed . . . including without being limited to termination

8    pay, severance pay, holiday/vacation pay, and overtime pay."  *Id*.  Barclay apparently expressed concerns

9    about this last provision.  *Id*.  On October 24, DRS sent Barclay a letter that confirmed a discussion where

10   the parties had agreed that Barclay would "receive 1 year's base salary and benefits on a salary

11   continuation basis."  Barclay signed and returned the Release and the October 24 letter (collectively "the

12   October separation agreements").  *Id*. at 3.  The October separation agreements required Barclay to (1)

13   keep its terms confidential, (2) keep all information to which he had been exposed at DRS confidential, and

14   (3) sign the Release.  October Order at 6.

15          Shortly thereafter, DRS human resources personnel determined that it was difficult to provide

16   Barclay with some of the benefits under the October separation agreements because he was not an

17   employee of the company.  July 25 Order at 2.  On December 3, 2001 DRS contacted Barclay and

18   suggested that his status remain active for one year rather than having his employment terminated with a

19   right to severance payments as provided in the October separation agreements.  *Id*.  Although Barclay

20   initially resisted the proposal, on December 4, he e-mailed DRS that he did "not believe [he] ha[d] an issue

21   with the changes."  *Id*.  DRS placed Barclay on active payroll.  *Id*.  Barclay received regular payroll and

22   benefits until May 2002, when DRS terminated his employment for what it deemed "good cause."  *Id*.

23   Barclay sued DRS for breach of the July employment agreement.

24          In the fall of 2003, DRS moved for summary judgment.  The court held that the October separation

25   agreements extinguished Barclay's rights under the July employment agreement, including his right to

26   severance benefits under section 4(a).  October Order at 4.  However, the court granted Barclay leave to

27   amend his complaint and pursue the theory that DRS breached its obligation to pay one year of base salary

28

2

1   and benefits as promised on the October agreement.  October Order at 4-5.  Barclay did so.  In his

2   amended complaint, Barclay preyed for attorney's fees under California Labor Code section 218.5.  July

3   Order at 10.

4          In February 2004, DRS again moved for summary judgment.  DRS argued that Barclay received

5   additional benefits for remaining an active employee after November 30, 2001, including 401(k)

6   contributions, vacation, and continued vesting of stock options.  In return for these benefits, DRS claimed,

7   Barclay accepted the risk of being an active employee, including being terminated for cause.   Barclay

8   contended that he was merely on the payroll to receive severance benefits and thus could not be fired for

9   cause.  Barclay also claimed that he received no consideration for being placed on active payroll.  The

10  court held that the October separation agreements did not originally provide for 401(k) contributions and

11  vesting of stock options.  *Id*. at 7.  However, the court ultimately held that both parties' interpretations of

12  their various agreements were reasonable and denied DRS' motion.  *Id*. at 8-9.  The court also denied

13  summary judgment on Barclay's attorney fees request without prejudice, reasoning that "[b]ecause

14  [Barclay] could be found to have been an employee for the period November 30, 2001 through November

15  29, 2002, and not fired for cause, he could still prevail on an action for nonpayment of wages." *Id*. at 10.

16         The case proceeded to a three-day bench trial.  On March 9, 2005, the court entered its Findings

17  of Fact and Conclusions of Law.  The court held that "DRS and Barclay entered into an employment

18  termination agreement when Barclay executed" the October separation agreements.  March Order at 9.

19  The court reasoned that the December e-mail exchange between the parties constituted a modification

20  proposal that Barclay never accepted.  *Id*.  The court  concluded that Barclay was entitled to the amount

21  which he was not paid under the October separation agreements minus the value of any benefits he

22  received that were not included therein.  *Id*. at 10.

## II.  ANALYSIS

### A.      Propriety of a Fee Award

25         "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or

26  pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party

27  if any party to the action requests attorney's fees and costs upon the initiation of the action."  Cal. Lab.

28

ORDER GRANTING MOTION FOR ATTORNEY'S FEES
NO. C-02-04095 RMW
DOH

1  Code § 218.5 ("section 218.5").  The term "wages" includes "all amounts for labor performed by

2  employees of every description, whether the amount is fixed or ascertained by the standard of time, task,

3  piece, commission basis, or other method of calculation."  Cal. Lab. Code § 200 ("section 200").  Here,

4  there is no dispute that Barclay "request[ed] attorney's fees and costs upon the initiation of the action."

5        However, DRS advances three arguments as to why Barclay is not entitled to attorney's fees.  First,

6  DRS contends that California Civil Code section 1717 (section 1717") prohibits an award of attorney's

7  fees in contract cases absent a specific contractual provision creating such a right.[1]  DRS cites *Foley v.*

8  *Interactive Data Corp.*, 47 Cal. 3d 654, 699 (1988) and *Khajavi v. Feather River Anesthesia Med.*

9  *Group*, 84 Cal. App. 4th 32, 62 (2000) for the proposition that "California courts have held that an

10  employee who is *not* a party to a written employment agreement allowing for attorney's fees may *not* seek

11  fees on that contractual cause of action."  Opp. Mot. at 3.

12        The court disagrees.  For one, neither *Foley* nor *Khajavi* are on point.  *Foley*, which held that

13  there is no tort of bad faith breach of contract, merely remarked that some commentators contend "that

14  contract remedies for breaches of contract are insufficient because they do not fully compensate due to their

15  failure to include attorney fees . . . ."  *Foley*, 47 Cal. 3d at 699.  Nowhere else does the court mention

16  attorney's fees; indeed, the case did not involve an attorney's fees issue at all.  Similarly, *Khajavi* rejected

17  the argument that a successful plaintiff in an action for breach of an oral employment contract was entitled to

18  attorney's fees when the contract did not provide for fees.  *Khajavi*, 84 Cal. App. 4th at 63.  The plaintiff

19  never contended—and the court never considered—whether section 218.5 applied.  In addition, statutory

20  "provisions relating to the same subject matter must be harmonized to the extent possible" and "[a]n

21  interpretation that renders related provisions nugatory must be avoided."  *Lungren v. Deukmejian*, 45 Cal.

22  3d 727, 735 (1988).  Under DRS' view, section 1717 would swallow section 218.5 whole.  The essence

23  of employment is contractual: absent an express or implied-in-fact agreement to exchange labor for

24  remuneration, there is no employment relationship.  Thus, virtually any claim "for the nonpayment of wages"

25

26  1.     Section 1717 provides that "[i]n any action on a contract, where the contract specifically provides
   that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of
27  the parties or to the prevailing party, then . . . the party prevailing on the contract, whether he or she is the
   party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other
28  costs."

1   will sound in contract.  The only way to avoid "render[ing]" section 218.5 "nugatory" is to construe it as an

2   exception to section 1717's general rule that attorney's fees are not available in contract cases unless the

3   contract provides for them.

4        Second, DRS contends that even if its payments under the October separation agreements are

5   "severance pay," "severance pay" is neither "wages" nor "fringe benefits" within the meaning of section

6   218.5.  DRS invokes *inclusio unius est exclusio alterious*: a canon of statutory interpretation that means

7   "the inclusion of one is the exclusion of another."  According to DRS, because section 218.5 is very

8   specific, the fact that it does not include severance pay indicates the Legislature intended to exclude

9   severance pay from the statute.

10       The court disagrees.  "[T]he inference embodied in the *maxim inclusio unius est exclusio alterius*

11  is not to be drawn when to do so would frustrate a contrary expression of legislative will."  *Fields v. Eu*, 18

12  Cal. 3d 322, 332 (1976).  For decades, California courts have interpreted the term "wages" in section 200

13  broadly.  *See, e.g., Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal. App. 3d 35, 44

14  (1972) (holding that profit sharing plans are "wages" under section 200).  In fact, one California court of

15  appeal declared that "severance pay constitute[s] wages" under the statute.  *Triad Data Services, Inc. v.*

16  *Jackson*, 153 Cal. App. 3d Supp. 1, 10 (1984), *overruled on other grounds by Smith v. Rae-Venter*

17  *Law Group*, 29 Cal. 4th 345, 370 (Cal. 2002).  The Legislature enacted section 218.5 in 1986.  As such,

18  it included the word "wages" against a backdrop where it was clear that courts would expansively interpret

19  the term.  In fact, because the California Supreme Court had not yet overruled *Triad Data Services*, the

20  Legislature acted at a time when California case law clearly established that "wages" included severance

21  pay.  Moreover, the plain meaning of "fringe benefit" is "an employment benefit (as a pension, a paid

22  holiday, or health insurance) granted by an employer that involves a money cost without affecting basic

23  wage rates" or "*any addition benefit*."  Webster's Ninth New Collegiate Dictionary 494 (1990) (emphasis

24  added).  This broad definition also seems to include severance pay.

25       Finally, DRS contends that its payments under the October separation agreements were not

26  severance pay.  DRS argues that this court has held that Barclay released it from its severance obligations in

27  the October severance agreements.  According to DRS, the October separation agreements subsumed its

28  obligation to Barclay under the July 10 employment agreement because "DRS promised 'new

5

1  consideration'" to Barclay under the October separation agreements "in return for three commitments by

2  [Barclay] . . . including [his] execution of a release." Opp. Mot. at 7. Thus, DRS asserts, Barclay's action

3  is a garden-variety breach of contract case, and is not for the "non-payment" of severance pay.

4        The court rejects this overly-formalistic interpretation of the dispute. The essence of Barclay's

5  claim was for non-payment of severance pay. As the court determined in its Finding of Facts and

6  Conclusions of Law, the October severance agreements "in essence provided Barclay with the benefits he

7  was promised under the original Employment Agreement." March Order at 6. Indeed, the parties entered

8  the October agreements to establish a procedure by which Barclay received severance benefits. DRS'

9  argument asks the court to ignore the source of its obligation to pay Barclay anything whatsoever. Nothing

10  in section 218.5 restricts its ambit to cases brought under an original employment contract. To the

11  contrary, the statute applies to "any action" brought for "non-payment" of wages or fringe benefits. Thus,

12  the court holds that Barclay is entitled to an award of attorney's fees.

13       **B.**    **Amount of Award**

14        Barclay recovered $116,000 at trial. His attorney, Jim McBride ("McBride"), took the case on a

15  contingency fee basis. Under the contingency fee agreement, McBride stands to receive the larger of 40%

16  of Barclay's recovery or any amount set by the court. McBride moves the court to apply the "lodestar"

17  method to determine the reasonable amount of recoverable fees. "[T]he fee setting inquiry in California

18  ordinarily begins with the 'lodestar,' *i.e.*, the number of hours reasonably expended multiplied by the

19  reasonable hourly rate . . . . The lodestar figure may then be adjusted, based on consideration of factors

20  specific to the case, in order to fix the fee at the fair market value for the legal services provided." *PLCM*

21  *Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (2002). In contingency fee cases, this adjustment

22  sometimes takes the form of a "multiplier." *See, e.g., Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)

23  ("'[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger

24  compensation than would otherwise be reasonable'") (quoting *Rader v. Thrasher*, 57 Cal. 2d 244, 253

25  (1962)). California courts consider a variety of factors when determining whether to augment the fee

26  award through a multiplier, including (1) the novelty and difficulty of the questions involved, (2) the

27  contingent nature of recovery, and (3) whether the case vindicated the public interest. *See, e.g., Serrano*

28  *v. Priest*, 20 Cal. 3d 25, 49 (1977). McBride argues that a multiplier is appropriate because (1) the case

ORDER GRANTING MOTION FOR ATTORNEY'S FEES
NO. C-02-04095 RMW
DOH

1   was contingent, (2) Barclay could not have pursued the case without a contingency fee arrangement, and

2   (3) the case took two and a half years to litigate.

3          The court declines to use a multiplier.  Although McBride did an admirable job litigating the case, it

4   involved comparatively simple contract issues.  The parties took less than ten depositions.  The bench trial

5   spanned only two and a half days.  In addition, although the matter was contingent, there is no indication

6   that Barclay—who was receiving a six-figure salary with DRS—would have had difficulty obtaining hourly

7   representation.  Finally, the case's length resulted in part from Barclay's initial failure to plead a cause of

8   action based on the October severance agreements, rather than the employment contract.[2]

9          The court employs McBride's "low" billing rate of $300 per hour.[3]  McBride spent a total of 221

10  hours on the case.  McBride Decl. Ex. 1.  Thus, he incurred fees in the amount of $66,300.  One of

11  McBride's partners with a similar billing rate spent 4.35 hours on the case, for fees in the amount of

12  $1,305.50.  Another lawyer with a "low" billing rate of $240 per hour spent 1.6 hours on the case, for fees

13  in the amount of $384.  Finally, McBride's firm billed 33.75 law clerk hours at $100 per hour, for fees in

14  the amount of $3,375.  The total fee award is thus $71,364.50.

15         **C.      Motion for Review of Clerk's Taxation of Costs**

16         Generally, taxation of costs is "in the first instance performed by the Clerk of the Court and his

17  decision is reviewable by the Court pursuant to Federal Rule of Civil Procedure 54(d)."  *Automotive*

18  *Products v. Tilton Engineering, Inc.,* 1994 WL 219912 *2 (C.D. Cal. 1994) (quoting *Castro v. United*

19  *States*, 104 F.R.D. 545, 548-49 (D. P.R. 1985)).  Here, applying the Local Rules, the clerk disallowed

20  the recovery of (1) filing fees, (2) service of process costs, and (3) deposition costs, including the cost of

21  travel.  However, Barclay asserts an entitlement to costs under a California statute: section 218.5.  *See* Cal.

22  Lab. Code § 281.5 (providing for an award of costs to the prevailing party).  California law permits the

23  

24  2.      At the same time, the court rejects DRS' argument that fees incurred while pursuing claims related
    to the employment contract should be expunged from the fee award.  Even though the court granted

25  summary judgment on these theories, there was considerable uncertainty about the relationship between the
    employment contract and the October severance agreements.

26  

27  3.      McBride provided the court with a "high" billing rate of $350 per hour and a "low" billing rate of
    $300 per hour.  McBride did not indicate the circumstances under which billed at each rate.  Moreover,

28  McBride admits that "experienced trial lawyers in this area" generally bill at $300 per hour for non-
    contingency fee cases.  Mot. at 5.

7

recovery of the costs Barclay initially sought. *See* Cal. Code Civ. Proc. § 1033.5.  DRS does not contest

Barclay's request.  Opp. Mot. at 12 n.2.  Thus, Barclay is entitled to costs in the amount of $6,527.34.

8

**III.  ORDER**

For the foregoing reasons:

1.  The court grants Barclay's motion for attorney's fees.

2.  The court awards Barclay's counsel attorney's fees in the amount of $71,364.50.

3.  The court grants Barclay's motion for review of clerk's taxation of costs.

4.  The court awards Barclay an additional $6,527.34 in costs.


DATED:  _____12/20/05_____    __/s/ Ronald M. Whyte_____
                                     RONALD M. WHYTE
                                     United States District Judge

9

ORDER GRANTING MOTION FOR ATTORNEY'S FEES
NO. C-02-04095 RMW
DOH

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Plaintiff:**
     John McBride   jmcbride@wmjpr.com

3
     **Counsel for Defendant:**
4    Nick Geannacopulos    ngeannacopulos@sf.seyfarth.com
     Kamili A. Williams      kwilliams@sf.seyfarth.com
5    Christian J. Rowley      crowley@seyfarth.com
      Lisa Barnett Sween      lsween@sf.seyfarth.com

6
     Counsel are responsible for distributing copies of this document to co-counsel that have not registered for
7    e-filing under the court's CM/ECF program.

8
     **Dated:** _____12/28/05_____    _____DOH_____
9                                                         **Chambers of Judge Whyte**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         10
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES
     NO. C-02-04095 RMW
     DOH